ROBERTSON WALL, ADMINISTRATOR OF THE ESTATE OF LUCY E. PLYMP-
TON, DECEASED, v. THE CITY OF ASHEVILLE, A MUNICIPAL CORPORA-
TION.

(Filed 26 February, 1941.)

1. **Trial § 22b—**

   Upon motion to nonsuit the evidence tending to support plaintiff's cause
   of action will be considered in the light most favorable to plaintiff, and
   he is entitled to every reasonable intendment thereon and every reason-
   able inference therefrom.   C. S., 567.

2. **Negligence § 17—**

   The plaintiff has the burden of proof on the issue of negligence and
   defendant has the burden of proof on the issue of contributory negligence.

3. **Municipal Corporations § 14—**

   A municipal corporation is under duty to exercise due care to keep its
   streets and sidewalks in a reasonably safe condition, and although it is
   not an insurer of their safety, it is required, in the exercise of due care,
   to remedy defects of which it has express or implied knowledge.

4. **Same—**

   Where a pit or embankment is adjacent to a sidewalk, whether the
   situation is such as to require the city, in the exercise of due care, to
   erect guard rails to protect pedestrians, or, if it has erected guard rails,
   whether such guard rails are adequate or sufficient, is ordinarily a ques-
   tion for the jury.

5. **Same—Evidence of municipality's failure to exercise due care to keep
   sidewalk in reasonably safe condition held for jury.**

   Plaintiff's allegations and evidence were to the effect that defendant
   municipality maintained a sidewalk only three feet wide on top of a re-
   taining wall, that the ground on the outer edge of the sidewalk was
   approximately eighteen feet below the sidewalk level, that the guard rail
   maintained by the city along the dangerous declivity was inadequate, that
   the *locus in quo* was inadequately lighted and that the surface of the
   sidewalk was allowed to remain in a rough and uneven condition so that
   when plaintiff's intestate attempted to step upon the sidewalk from the
   street, she fell upon the sidewalk and through the guard rails to the
   ground eighteen feet below, resulting in mortal injury.   *Held:* The alle-
   gations and evidence are sufficient to take the case to the jury upon the
   issue of negligence of the municipality in failing to exercise due care to
   keep its sidewalk in a reasonably safe condition.

6. **Same—Whether pedestrian was guilty of contributory negligence in
   failing to confine her path of travel to sidewalk held for jury.**

   While a pedestrian is guilty of contributory negligence if, when con-
   fronted by two ways of travel, one safe and the other dangerous, she
   chooses the dangerous way with knowledge of the danger, whether plain-
   tiff's intestate, alighting at a bus terminal as a stranger in defendant
   municipality, was guilty of contributory negligence in walking along the
   street from the bus terminal to an automobile waiting for her on the
   same side of the street, and, upon reaching the car, in turning and

attempting to step back up on the sidewalk from the street instead of confining her path of travel to the three-foot sidewalk, *is held* a question for the jury upon the evidence in this case.

7. **Negligence §§ 19a, 19b—**

Ordinarily, the questions of negligence and contributory negligence are for the jury and not the court, and is only when but one inference can be reasonably drawn from the evidence that a nonsuit on the ground of negligence or contributory negligence may be properly entered by the court.

STACY, C. J., BARNHILL and WINBORNE, JJ., dissent.

APPEAL by plaintiff from *Armstrong, J.,* at the Regular September, 1940, Civil Term, of BUNCOMBE. Reversed.

This is an action for actionable negligence, brought by plaintiff against defendant for damage for the death of plaintiff's intestate. The plaintiff alleges in the complaint, in part:

"That on or about the 15th day of September, 1939, and at about 10:30 o'clock P.M., and during the night time, the plaintiff's intestate, who was a citizen and resident of the State of Florida, was transported to Asheville on a bus, which said bus delivered plaintiff's intestate along with other passengers at the Asheville Union Bus Terminal located on Wall Street in the City of Asheville; that said plaintiff's intestate was a stranger to the City of Asheville and was not familiar with the location and general construction of said Wall Street or the sidewalk along the South side thereof, or the fact that there was a high stone wall along said street and that the adjacent ground on the South side thereof was approximately eighteen feet below the level of the sidewalk of said Wall Street.

"That after said plaintiff's intestate got off said bus at the Union Bus Terminal, she was attempting to walk to an automobile located some distance Westwardly on Wall Street from said Bus Terminal, to which automobile she was being conducted for the purpose of being transported to the home of friends in the City of Asheville, and that plaintiff's intestate walked along the Street portion of said Wall Street and for the reason that due to the negligent construction of said sidewalk it was not of sufficient width to permit two people to walk along the same side by side, and upon reaching the parked automobile which she intended to enter, said plaintiff's intestate was attempting to step onto the sidewalk of said Wall Street in order to enter said automobile; that as plaintiff's intestate attempted to step on to the sidewalk of said Wall Street, and because of the irregularity and .variation in the height of said sidewalk and due to the rough, uneven and improper construction of the surface of said sidewalk, she was caused to lose her balance and fall to her knees across the width of said sidewalk, and because of the improper, negligent

and careless manner in which said guard rail was constructed, and in the absence of any proper barrier, guard rail or other safety device to protect her, she fell headlong from the sidewalk some eighteen feet to the ground below, thereupon suffering severe and serious injuries which resulted in her death several hours afterward.

"The injury and death of plaintiff's intestate resulted directly and proximately from the wrongful actions and neglect of the defendant corporation in the construction and maintenance of the sidewalk and guard rail as hereinbefore described, and in its failure to repair and maintain a reasonably safe walkway and guard rail adjacent thereto, all of which negligent acts of the corporate defendant were in violation of its positive duty to maintain said sidewalk and guard rail in a reasonably safe condition for pedestrian traffic under the circumstances there existing.

"That the wrongful and negligent acts of the defendant which directly and proximately caused the injury and death of plaintiff's intestate are particularly set forth as follows:

"(a) In negligently constructing and maintaining a sidewalk or walkway along the South margin of Wall Street on top of a stone wall and of only three feet in width and without leaving adequate and sufficient walking surface whereby pedestrians could traverse the same in reasonable safety.

"(b) In constructing and maintaining the surface of said three foot sidewalk in a defective, rough and uneven condition, thereby rendering the said walkway highly dangerous for any pedestrian using the same.

"(c) In negligently constructing, maintaining and failing to keep in repair the surface of said three foot walkway, whereby the height of the said sidewalk from the street level was irregular, defective, sloping and otherwise unsafe for pedestrian traffic to use the same.

"(d) In negligently constructing and maintaining a guard rail along the outer edge of said sidewalk where the adjacent ground was approximately eighteen feet below said sidewalk level, when said guard rail was so improperly and inadequately constructed and maintained that it did not and could not offer reasonably safe and sufficient protection to any person using said sidewalk, whereby such persons would be prevented from falling from said sidewalk and from a height of approximately eighteen feet to the ground below.

"(e) In negligently and wrongfully failing to construct and maintain a guard rail along said dangerous declivity of such a character as the circumstances there presented reasonably demanded.

"(f) In negligently failing to provide sufficient guard rails, wire or other protection whereby any pedestrian using said walkway would be prevented from falling from a height of approximately eighteen feet

to the ground below while attempting to traverse and walk upon said faultily and negligently constructed and maintained sidewalk or walk-way.

"(g) In negligently failing to provide for the use of pedestrian traffic and the public generally a reasonably safe way to travel over and upon said walkway.

·"(h) In negligently failing to maintain adequate and sufficient lights or a lighting system along said Wall Street, thereby leaving an inherently and intrinsically dangerous nuisance open to anyone using said walkway or sidewalk of said Wall Street, in darkness, and thereby increasing the hazard and probability of serious and permanent injuries resulting in anyone attempting to use said sidewalk or walkway during the night time.

"(i) In negligently, carelessly, and in violation of its positive duty, constructing and maintaining a highly dangerous, inadequate and insufficient sidewalk and walkway on said Wall Street, without reasonable, proper or adequate guard rails along the same, and thereby causing the death of plaintiff's intestate.

"Plaintiff's intestate at the time of her death was an elderly woman, a widow, and the mother of a family, and was at said time and had for a long period of time prior thereto enjoyed excellent health, and was an educated and accomplished person, engaged in a life work of value to herself and her family, and had every reasonable anticipation of many years of active and useful endeavor, and that by reason of the negligent and wrongful acts of omission and commission by the defendant plaintiff's intestate came to her death and the plaintiff has been damaged thereby in the sum of Fifteen Thousand Dollars ($15,000.00).

"That due notice of this claim was presented to the defendant corporation by filing written notice of said claim with the council duly assembled, which said notice of claim was regularly acknowledged on the 14th day of December, 1939, and the payment of which claim was denied by the defendant." Demand for damages, etc.

The defendant denied the material allegations of the complaint and as a further answer and defense, alleges:

"The defendant is informed and believes and so alleges that the plaintiff's intestate did on the 15th day of September, 1939, arrive in the City of Asheville, at what is known as the Union Bus Terminal; that when she arrived on the bus in which she had traveled from the State of Florida, she was met by two citizens of the City of Asheville, and proceeded in a westerly direction in the middle of the public street for some feet to where an automobile, the property of Mr. Harry Parker, was parked; that when the plaintiff's intestate reached said automobile she was at that time in the middle of the street where vehicular traffic

WALL v. ASHEVILLE.

was carried on and where pedestrians were forbidden to walk; that she made a diagonal left-hand turn and stepped upon the curb, tripping herself and falling over the embankment; that she was warned two times to watch her step, that there was a curb there, and that she might slip and fall; and after receiving said warning the plaintiff's intestate negligently and carelessly stepped upon the curb, causing herself to trip and stumble; and that her careless acts constitute contributory negligence, and contributory negligence is hereby pleaded in bar of any recovery.

"That if, after having gotten off of said bus as mentioned above, the plaintiff's intestate had taken the usual route and walked along a sidewalk that had been provided for pedestrians the accident to the plaintiff's intestate would never have happened, because she could not have tripped over said curb in stepping up; that in failing to comply with the laws of the State of North Carolina and the charter of the City of Asheville, namely, to use said sidewalk instead of the main public street, plaintiff's intestate contributed to her own injury, and her negligent acts herein constitute contributory negligence, and contributory negligence is hereby pleaded in bar of any recovery.

"That the injury to said plaintiff's intestate was due to her own negligence in not keeping a safe look-out in walking along the street, and in walking along in a hurried manner, and in not watching where she was going; and that the plaintiff's intestate by the exercise of ordinary care should have known the condition of the said sidewalk; that said injury was due to her own negligence and she contributed to her own injury, and contributory negligence is hereby pleaded in bar of any recovery.

"That the place where the plaintiff's intestate fell is in an absolutely safe condition and has been at all times; and that said injury was caused by her own negligent acts and not those of this defendant, as alleged in the complaint, and contributory negligence on the part of plaintiff's intestate is hereby pleaded in bar of any recovery.

"Wherefore, having fully answered, the defendant prays: That the plaintiff recover nothing by this action," etc.

In reply plaintiff denies the allegations in the further answer and defense and replying further, alleges and avers:

"This plaintiff denies that his intestate was negligent and that her negligence contributed to any injury which she received, and says further that the negligence of the defendant, as set forth and related in the complaint filed herein, was the primary and proximate cause of the injury and death of plaintiff's intestate, and that the said defendant should have reasonably foreseen that its negligence in the construction and maintenance of the sidewalk, guard rail and lighting system on said Wall Street at said time and place would result in serious and permanent

injury to this plaintiff's intestate or any other person placed in the same circumstances; and that if it should be adjudicated that plaintiff's intestate was negligent in any manner, which negligence is expressly denied, said alleged negligence was insulated by the primary and original negligence of the defendant, and such negligence of the said defendant was the proximate and direct cause of the death of plaintiff's intestate."

The plaintiff introduced evidence sustaining the allegations of the complaint. At the close of plaintiff's evidence the defendant made a motion in the court below for judgment as in case of nonsuit. C. S., 567. The court below sustained the motion, the plaintiff excepted, assigned error and appealed to the Supreme Court.

*Harkins, Van Winkle & Walton for plaintiff.*
*Philip C. Cocke, Jr., and S. G. Bernard for defendant.*

CLARKSON, J. We think there was error in granting the nonsuit in the court below. On a motion to nonsuit, the evidence tending to support plaintiff's cause of action will be considered in the light most favorable to plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom.

The *first* question involved: Was there sufficient evidence of negligence on the part of defendant proximately causing the death of plaintiff's intestate and should an issue have been submitted to the jury with respect thereto? We think so.

The burden on the question of negligence is on the plaintiff, and as to contributory negligence on defendant.

In *Bunch v. Edenton,* 90 N. C., 431 (434), *Merrimon, J.,* speaking for the Court, said: "It was the positive duty of the corporate authorities of the town of Edenton to keep the streets, including the side-walks, in 'proper repair'; that is, in such condition as that the people passing and repassing over them might at all times do so with reasonable ease, speed and safety. And proper repair implies also that all bridges, dangerous pits, embankments, dangerous walls and the like perilous places and things very near and adjoining the streets, shall be guarded against by proper railings and barriers. Positive nuisances on or near the streets should be forbidden under proper penalties, and, when they exist, should be abated. . . . (p. 435). The side of the street is a material part of it, and must be kept free from danger, however the same may arise, as well as other portions of the street. Pits and other dangerous places immediately adjoining it and near to it make it perilous, and such places are nuisances. When these are permitted to exist and the streets are not properly protected against them, the latter are not in reasonable repair." *Russell v. Town of Monroe,* 116 N. C., 720;

*Dillon v. Raleigh,* 124 N. C., 184 (188-189); *Fitzgerald v. Concord,* 140 N. C., 110; *Brown v. Durham,* 141 N. C., 249; *Bailey v. Winston,* 157 N. C., 252; *Alexander v. Statesville,* 165 N. C., 527 (533); *Darden v. Plymouth,* 166 N. C., 492; *Graham v. Charlotte,* 186 N. C., 649; *Goldstein v. R. R.,* 188 N. C., 636; *Willis v. New Bern,* 191 N. C., 507 (511); *Speas v. Greensboro,* 204 N. C., 239; *Gasque v. Asheville,* 207 N. C., 821 (829); *Doyle v. Charlotte,* 210 N. C., 709 (711); *Whitacre v. Charlotte,* 216 N. C., 687; *Barnes v. Wilson,* 217 N. C., 190.

The *Bunch case, supra,* has been the unbroken law in this jurisdiction and the principle reiterated in *Radford v. Asheville, post,* 185.

In 43 C. J., part sec. 1837, at p. 1062, we find: "The precaution should be sufficient to give such warning as will reasonably notify all persons using the street that the danger is there, and *whenever a barrier or guard rail is erected, it should be of such a character and placed in such position in reference to the use of the street as will afford protection, and not produce a peril to persons passing on the way."* (Italics ours.) Sec. 2046, p. 1286: "In case of an accident occurring because of an unguarded or unlighted opening, pitfall, or obstruction on a sidewalk or driveway, it is ordinarily a question for the jury whether, under the circumstances of the particular case, it was defendant's duty to have guards, barriers, or lights at the place of the accident for the protection of travelers; whether there were guards, barriers, or lights; whether they were adequate or sufficient for the purpose," etc.

In *Dowell v. Raleigh,* 173 N. C., 197 (202-203), it is stated: "But the city cannot be held liable unless it had or should have had notice of the defect, if one existed. 'The governing authorities of a town are charged with the duty of keeping their streets and sidewalks, drains, culverts, etc., in a reasonably safe condition; and their duty does not end at all with putting them in a safe and sound condition originally, but they are required to keep them so to the extent that this can be accomplished by proper and reasonable care and continuing supervision. Code, sec. 3803; *Bunch v. Edenton,* 90 N. C., 431; *Russell v. Monroe,* 116 N. C., 720. The town, however, is not held to warrant that the condition of its streets, etc., shall be at all times absolutely safe. It is only responsible for negligent breach of duty, and, to establish such responsibility, it is not sufficient to show that a defect existed and an injury has been caused thereby. It must be further shown that the officers of the town "knew or by ordinary diligence might have discovered, the defect, and the character of the defect was such that injuries to travelers therefrom might reasonably be anticipated." It will be observed that actual notice of a dangerous condition or defective structure is not required, but notice may be implied from circumstances, and will be imputed to the town if its officers could have discovered the defect by the exercise of proper dili-

WALL *v.* ASHEVILLE.

gence.'   *Fitzgerald v. Concord,* 140 N. C., 110 (citing and quoting
1 Sh. and Redf., sec. 369)."   *Gasque v. Asheville, supra,* pp. 828-829.

The *second* question involved: Was the evidence sufficient to hold
plaintiff's intestate guilty of contributory negligence as a matter of law?
We think not.

We think the question of contributory negligence was one for the jury
to pass on, under proper instructions.

In *Groome v. Statesville,* 207 N. C., 538 (540), *Schenck, J.,* speaking
for the Court, says: " 'If two ways are open to a person to use, one safe
and the other dangerous, the choice of the dangerous way, with knowl-
edge of the danger, constitutes contributory negligence. . . . And
where a person *sui juris* knows of a dangerous condition and voluntarily
goes into the place of danger, he is guilty of contributory negligence,
which will bar his recovery.'   *Dunnevant v. R. R.,* 167 N. C., 232; 45
C. J., 961."

The generally accepted definition of "contributory negligence," citing
a wealth of authorities, is thus stated in Black's Law Dictionary, 3rd
Ed., p. 1231: "Contributory negligence, when set up as a defense to an
action for injuries alleged to have been caused by the defendant's negli-
gence, means any want of ordinary care on the part of the person
injured (or on the part of another whose negligence is imputable to
him), which combined and concurred with the defendant's negligence,
and contributed to the injury as proximate cause thereof, and as an
element without which the injury would not have occurred."   *Battle v.
Cleave,* 179 N. C., 112 (114) ; *Boswell v. Hosiery Mills,* 191 N. C., 549;
*Elder v. Plaza Ry.,* 194 N. C., 617.

In *Absher v. Raleigh,* 211 N. C., 567 (568-9), the question of con-
tributory negligence is fully discussed, citing authorities. It is there
said: " 'A serious and troublesome question is continually arising as to
how far a court will declare certain conduct of a defendant negligence
and certain conduct of a plaintiff contributory negligence and take away
the question of negligence and contributory negligence from the jury.
The right of trial by jury should be carefully preserved, and if there is
any evidence, more than a scintilla, it is a matter for the jury and not
the Court.'   *Moseley v. R. R.,* 197 N. C., 628, 150 S. E., 184."

For the reasons given, the judgment of the court below is
Reversed.

STACY, C. J., and BARNHILL and WINBORNE, JJ., dissent.